JUDGE LYNCH

AO 440 (Rev. 02/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of New York

| | |
|---|---|
| Michael T. Sheridan | ) |
| _Plaintiff_ | ) |
| | ) |
| v. | ) |
| NEW YORK LIFE INVESTMENT MANAGEMENT, LLC | ) |
| _Defendant_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

09 CIV 4746

To: _(Defendant's name and address)_  NEW YORK LIFE INVESTMENT MANAGEMENT, LLC

169 Lackawanna Avenue

Parsippany, New Jersey 07054

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Sack & Sack, Esqs.
110 E. 59th St., 19th Fl.
New York, New York 10022
(212) 702-9000 / Fax: (212) 702-9702

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

J. MICHAEL McMAHON
CLERK OF COURT

Date:  MAY 2 0 2009

_Signature of Clerk or Deputy Clerk_

**SACK & SACK, ESQS.**
110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
*Attorneys for Plaintiff, Michael T. Sheridan*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**MICHAEL T. SHERIDAN,**                        :

                                    Plaintiff,            :          Civ No. ____

                    vs.                                  :

                                                         :

**NEW YORK LIFE INVESTMENT**             :

**MANAGEMENT, LLC,** and                    :          **COMPLAINT**

**CHRIS FIACCO,** individually,                  :

                                                         :          JURY TRIAL REQUESTED

                                    Defendants.         :

                                                         :

------------------------------------------------------------X

'09 CIV 4746



          Plaintiff Michael T. Sheridan ("*Plaintiff*" or "*Sheridan*"), by his attorneys Sack &

Sack, Esqs., as and for his complaint against New York Life Investment Managemnet,

LLC ("*NYLIM*"), and Chris Fiacco ("*Fiacco*" together with NYLIM, "*Defendants*")

alleges as follows:

<u>**NATURE OF ACTION**</u>

          1.          Sheridan brings this action against his former employer following his

unlawful discrimination in the terms, conditions, and privileges of his employment in

violation of Federal Age Discrimination in Employment Act ("*ADEA*"), as amended by

the Older Worker Benefit Protection Act ("*OWBPA*"), 29 U.S.C. § 600, et seq. based on his age, over 40, as specifically set forth herein.

2.     Sheridan further complains that Defendants engaged in the unlawful discrimination of Plaintiff in the terms, conditions, and privileges of his employment in violation of the New York State Human Rights Law, Executive Law § 290 et seq. ("*NYSHRL*") and the Administrative Code of the City of New York § 8-101 et seq. ("*NYCHRL*") based upon his age (over 40).

3.     Plaintiff files this action to obtain redress for discriminatory employment practices, discrimination on account of his age, loss of employment and loss of earnings.

4.     Plaintiff files this action to seek monetary relief for the denial of equal employment opportunity and for the unlawful employment practices of Defendants.

5.     Plaintiff further complains that he has suffered, is suffering and will continue to suffer severe economic and non-economic damages because Defendants:

       a.     Discriminated against him with respect to the terms, conditions and privileges of his employment on account of his age (over 40) by  providing a fabricated poor performance review without warning or justification; and

       b.     Deprived Plaintiff of his employment rights in violation of federal and state law.

6.     On or about February 25, 2008, Sheridan filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("*EEOC*"), charge number 520-2005-03372.

7.    Plaintiff timely brings this action within ninety (90) days of the receipt of a Notice of Right to Sue Letter, issued by the EEOC on February 25, 2009.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

9.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).    Venue in this matter is properly laid in the District because the violations of the Plaintiff's federal and state civil rights occurred during the course of their employment at branch office locations in this District, because the Defendant does business in this District, and because most of the fact witnesses and evidence are common to or most convenient to this District.

## FACTS COMMON TO ALL COUNTS[1]

### PARTIES

11.    Plaintiff, Michael T. Sheridan, currently resides at 133 Bellair Drive, Dobbs Ferry, New York 10024, located in the County of Westchester and State of New York.

---

[1] All directly quoted statements, unless otherwise specified, are the sum and substance of such statements as recalled by Plaintiff.

12.    At all times relevant herein, Plaintiff was an employee within the meaning of the ADEA, NYSHRL and NYCHRL and thus afforded protection against discrimination in employment on the basis of his age and was a member of the protected group of workers 40 years of age or older.

13.    Defendant NYLIM, at all relevant times herein, is a corporation licensed to do business in the State of New York, with its corporate headquarters at 169 Lackawanna Avenue, Parsippany, New Jersey 07054, located in the County of Morris and State of New Jersey.

14.    Defendant NYLIM is an "employer" within the meaning of the ADEA, NYSHRL and NYCHRL, and as such was prohibited from discriminating in employment on the basis of age.

15.    Defendant Fiacco is an individual who currently resides at 122 Bower Lane, Forest Hill, Maryland 21050.

16.    At all relevant times herein, Defendant Fiacco was Plaintiff's supervisor and in a position to discriminate and retaliate against Plaintiff in violation of NYSHRL and NYCHRL.

17.    At all relevant times herein, Defendant Fiacco is an individual who either aids, abets, incites, compels or coerces unlawful discriminatory retaliation pursuant to NYSHRL and NYCHRL.

## BACKGROUND

18.     Sheridan is an accomplished, competent and well-credentialed mutual fund wholesaler.

19.     Sheridan's date of birth is September 1, 1960.  At all relevant times herein, Sheridan was 46 years of age.

20.     Sheridan was a loyal, hardworking employee for NYLIM for eighteen years, whose employment history was unblemished until the discriminatory actions complained of herein took place.

## SHERIDAN'S EXTENSIVE EXPERIENCE
## AND EMPLOYMENT AT NYLIM

21.     On or about May 15, 1989, Sheridan began his employment as a sales consultant on behalf of NYLIM.

22.     In or around January 1995, Sheridan was promoted to the position of mutual fund wholesaler, a position he held until he was unceremoniously terminated by NYLIM after eighteen years of loyal service and hard work.

23.     As a mutual fund wholesaler, Sheridan's responsibilities included selling Mainstay Mutual Funds to broker-dealers.

24.     From the commencement of his employment, up until and continuing through the date of his discriminatory termination, as a direct result of his hard-work, savvy business acumen, expert communication, team building and sales skills and in-

depth knowledge of NYLIM's business, Sheridan significantly implemented, developed, built and maintained NYLIM's business, improving overall financial performance, and increasing Defendant's profits and revenues year-over-year.

25.    In fact, just within the few months prior to his discriminatory termination, Sheridan was credited with the following accomplishments:

     a.    4th Quarter 2006 – Sales Focus Winner;

     b.    May 2007 and June 2007 – Ranked 5th out of 32 wholesalers;

     c.    As of July 1, 2007 – Overall ranking for calendar year 2007 was 12th out of 32 wholesalers.

26.    In respect of each year of his employment, Sheridan consistently ranked in the top quartile of all mutual wholesalers at NYLIM.

27.    During his employment, and up until six months prior to his discriminatory termination, Sheridan received consistently positive performance reviews from <u>eight</u> different supervisors.

28.    On or about February 23, 2007, Sheridan received his last (and positive) Performance Appraisal from his manager, Chris Parisi ("*Parisi*").

29.    On or about December 1, 2006, NYLIM announced that beginning on January 1, 2007, Parisi would cease being Sheridan's supervisor and that Defendant Chris Fiacco ("*Fiacco*") would become Sheridan's new supervisor.

## NEW MANAGEMENT CHANGES RESULT IN
## AGE-BASED DISCRIMINATION

30.     On or about January 1, 2007, even before he received his former manager's (Parisi) final satisfactory Performance Appraisal, Defendant Fiacco was appointed as Sheridan's new manager.

31.     From that time through February 15, 2007, Defendant Fiacco had observed Sheridan in the field for merely approximately 3 hours and had spoken about his job performance on only 3 or 4 occasions.

32.     From their earliest conversation, it was very clear that Defendant Fiacco targeted Sheridan based upon his age, over 40.

33.     In the first concrete instance, on February 15, 2007, merely forty-five (45) days after Defendant Fiacco became Sheridan's manager, Defendant Fiacco sent Sheridan an email that concluded with the following statements: "**The ball is in your court.  Step up or step aside so that I can reward someone else who will take advantage of the opportunity that is in front of you.**"

34.     Sheridan never received any feedback, let alone complaints, that was even close to the tone and insinuation that Defendant Fiacco was making in his February 15th email to Sheridan.

35.     Later that day, on February 15, 2007, Sheridan telephoned Defendant Fiacco to ask him for clarification on his bizarre comments.  In response, Defendant

Fiacco unequivocally admitted to Sheridan:  **"There are plenty of young guys on the (marketing) desk who would love your job."**

36.     Sheridan was disappointed and frustrated that Defendant Fiacco, who barely knew Sheridan and knew nothing about his dedication, leadership, sales skills and eighteen (18) years of accomplishments and career building at NYLIM, was making a determination about Sheridan's vitality to NYLIM solely based upon his age.

37.     Defendant Fiacco clearly lacked an adequate basis to form a fair assessment of Sheridan's performance.  Even worse, instead of offering Sheridan assistance or constructive criticism that he purportedly required (according to his subjective and discriminatory opinion) as Sheridan's new supervisor, Defendant Fiacco immediately condemned Sheridan and never gave him an opportunity to disprove Defendant Fiacco's predisposed discriminatory animus.

38.     Immediately upon hearing Defendant Fiacco's discriminatory comments concerning "**young guys**", Sheridan knew that no matter what he did, Defendant Fiacco sought to remove Sheridan from his position at NYLIM in favor of a less-experienced, but younger, employee.

39.     From that first blatant comment on February 15, 2007, the discriminatory comments and animus continued, and over time, became more blatant and overt.

40.     On February 23, 2007, Sheridan received a positive Performance Review from his former manager, Parisi, in respect of Sheridan's performance in 2006.

41.     At that time, Sheridan sought the opportunity to raise his concerns about Defendant Fiacco's discriminatory comments and obvious disposition.  Sheridan asked

Parisi about Defendant Fiacco's February 15th email and his discriminatory comments subsequent to the follow-up conversation.

42.    Instead of taking Sheridan's complaints seriously, Parisi merely told Sheridan to, "**just keep your head down and keep doing what you're doing.**"

43.    Despite Parisi's advice, since Defendant Fiacco became Sheridan's supervisor, and after 18 years of a harassment-free work environment, Defendant Fiacco continued to create, promote and condone a hostile work environment throughout NYLIM.

44.    On April 20, 2007, Defendant Fiacco informed Sheridan that two internal wholesalers (both approximately 20 years younger than Sheridan) who attended Sheridan's previous night's sales meeting told Defendant Fiacco that Sheridan did not take charge of the meeting.  Defendant Fiacco, taking the word of two far more junior salespeople, told Sheridan, "**as a senior wholesaler you need to step up.**"

45.    In response, Sheridan became very embarrassed and told Defendant Fiacco that it was these two wholesalers who were unprepared when the AV equipment broke and that their lack of preparation was the cause for any "hiccup" in the meeting. Sheridan subsequently telephoned the client who hosted the previous nights' meeting and she confirmed that Sheridan was in no way responsible for the poor presentation. Sheridan relayed the client's comments to Defendant Fiacco and Parisi and stated to them that, "**blaming me for the unsuccessful meeting was nothing but a set-up.**"

46.    Defendant Fiacco continued to blame Sheridan for this meeting and berated Sheridan's overall job performance stating, "**how do you like having Joe McQuade kick your ass in sales.**"  Joe McQuade was another wholesaler whose sales territory covered three states compared to Sheridan's one state.  Interestingly, Joe McQuade is approximately 33 years old with only two years of wholesaling experience.

47.    On May 30, 2007, in further instances of discrimination, Defendant Fiacco, without any reason or justification or basis, called to inform Sheridan that, "**things aren't working for you, Michael.  The culture is changing and you are not part of the new culture.  It has been a culture of complacency, and now it is a culture of high achievers.**"

48.    Sheridan was puzzled by Defendant Fiacco's statement considering that Sheridan's performance had been excellent and through his hard work, expertise and business acumen, skills and experience Sheridan had earned significant revenues on behalf of NYLIM during his tenure.

49.    Furthermore, NYLIM's own internal ranking system confirms that Sheridan ranked among the top salespeople in his group.

50.    Defendant Fiacco continued to aggressively find "**dirt**" to justify getting rid of the "**older**" employee to replace him with the "**young guys**" to conform with the "**changing culture**", but to no avail.

51.    On May 21, 2007, Defendant Fiacco requested copies of statements from Sheridan's personal EZ Pass account as a way to verify his appointments.

10

52.    Sheridan was the only employee who was required to verify his personal business whereabouts and this was the first time he was ever asked to do so in his 18 years of employment at NYLIM.

53.    On May 23, 2007, Sheridan informed Defendant Fiacco that it would take 3-5 business days for EZ Pass to send him an account password.

54.    On May 30, 2007, Defendant Fiacco told Sheridan that Mike Coffey (who is Parisi and Defendant Fiacco's boss) and Parisi laughed when they heard that Sheridan said that it would take 3-5 days for the EZ Pass info.

55.    During this conversation Sheridan also learned that Defendant Fiacco was preparing a "Memo of Understanding" that would, in effect, give Sheridan 60 days' notice of his termination.  Sheridan asked what he could do in order to retain his job. Defendant Fiacco replied, "**there's nothing you can do.  My perception of you will not change in 60 days.  You will effectively be terminated.**"

56.    On or about June 6, 2007, for the first time in his 18 years of employment at NYLIM, without any reason or justification, Sheridan received a "Memo of Understanding" dated June 1, 2007 from Defendant Fiacco, identifying four areas of his job performance that was purportedly " **in need [*sic*] significant improvement.**"

57.    On June 4, 2007, Sheridan had a conversation with Alan Dowiak ("*Dowiak*"), Senior Managing Director and Head of Human Resources at NYLIM and asked him to send Sheridan his personnel file so that he could properly respond to the baseless "Memo of Understanding."  At that time, Sheridan also asked Dowiak what the proper procedure was for giving 60 days' notice as set forth in the memo.

58.    Dowiak's response was that, "**for a wholesaler like yourself to receive notice, it is based on sales.**"

59.    When Sheridan informed Dowiak that Defendant Fiacco had said there was nothing he could do to change his perception, Dowiak said that this was not the company policy regarding Memos of Understanding.    Dowiak stated that, "**the purpose of a Memo of Understanding was to allow the manager to help an employee improve in specific areas of job performance.  It should not have been utilized as a notice of termination of employment.**"

60.    On June 17, 2007, Sheridan formally responded to the "Memo of Understanding" in writing to Dowiak by answering each of the four areas of his job performance identified in the memo as "needing significant improvement."

61.    Point 1: "increase my sales to a level equal to or above current goal requirements."

Sheridan's Response:

As [Fiacco] is well aware, my current sales numbers put me in 8th place out of 32 wholesalers for the month and 13th in year-to-date sales at NYLIM.  I have achieved this high ranking despite having a smaller territory and no wire-house clients like most of the other wholesalers. While I am 9.7% below an admittedly aggressive sales goal, 19 of the other 31 wholesalers (approximately 61%) have not achieved their respective sales goals either and are off by significantly larger percentages than mine. None of the other 19 under-performing wholesalers have been

> reprimanded. I feel that I am being
> singled out for arbitrary reasons. **It may
> be significant that 18 of these 19 other
> wholesalers are significantly younger than
> I am.**

62. Point 2: "maintain a level of activity that is equal to or greater then (sic) the minimum requirement of 5 individual appointments daily and 2 after market events weekly."

> Sheridan's Response:
>
> As I have documented through the SMART
> system that this level of activity has
> been achieved and maintained by me since
> January 2007 when he specifically set
> forth these requirements.

63. Point 3: Requiring Sheridan to follow a territory segmentation plan and optimize efficiency in the territory.

> Sheridan's Response:
>
> As [Fiacco] knows, this was accomplished
> by conferring with my internal wholesaler,
> David Riffle, on March 12, 2007 and
> mapping out the location of each of my
> producers.

64. Point 4: Finally, Defendant Fiacco states that Sheridan must provide documentation and receipts for daily travel and activity in territory.

> Sheridan's Response:
>
> I have done this for the entire 12 years I
> have worked as a wholesaler and continue
> to do so. In fact, if my documentation
> for expenses were not adequate, I would
> not receive my monthly reimbursements from
> the Company. He specifies that

13

documentation should include toll receipts and monthly cell phone bills. The Company policy, as stated in the expense procedures, is that documentation is not required for any single expense under $15. On this basis, I have not submitted toll receipts for the past 12 years and such receipts have never been requested. On May 21, 2007 Mr. Fiacco demanded that I produce my personal EZPass account statement for him to review and verify my accountability. I do not believe that other wholesalers are required to produce their personal EZPass records. He also requested copies of my personal cell phone records, even though I have never requested any type of Company reimbursement for my personal cell phone. I do not believe that other wholesalers are required to provide personal, private cell phone records for his analysis. **He is clearly subjecting me to stricter, arbitrary standards as compared to my peers.**

**Mr. Fiacco has set higher performance goals for me and is holding me to different standards than my counterparts. He targeted me for adverse employment action even though other wholesalers are performing far below my sales numbers.** He has offered inconsistent and arbitrary reasons for his dissatisfaction with my job performance; first claiming it was due to my poor sales and later telling me even improved sales would not change his perception of me. **Recently, on May 30, 2007, he told me that "things weren't working for me" and that the culture was simply changing. I can infer what he meant by that comment.**

I am completely frustrated by Mr. Fiacco's actions and even more puzzled by his motives. Since it is clearly futile for me to speak with Mr. Fiacco directly, I am available to discuss these issues

14

> with you.  My hope is that we can clear
> the  air  and  have  an  open  line  of
> communication going forward.

65.    On July 6, 2007, without reason, justification or cause, and in retaliation to his lawful complaints concerning being treated differently in respect of the terms, conditions and privileges of his employment as compared to his similarly situated co-workers who are held to a lower standard, Sheridan was terminated from his employment with NYLIM after 18 years of service.

66.    On July 27, 2007, Sheridan received a termination notice from Dowiak, stating, **"As we discussed, your employment is being terminated effective July 6, 2007."**

67.    In addition, in the July 27th Memo, Dowiak stated, **"To ease your transition, we are offering you a generous separation package."**

68.    Following his discriminatory and unlawful termination, Sheridan was replaced by a person about 20 years younger than him with no wholesaling experience.

69.    Defendants made an adverse employment decision concerning Sheridan based upon discriminatory animus concerning his age, over forty (40).

70.    Furthermore, prior to the commencement of this action, Plaintiff served a copy of this Complaint to the following persons at the last known address set forth in accordance with the New York City Administrative Code § 8-502(c):

Corporation Counsel of New York City
100 Church Street, Room 4313
New York, New York 10007

NYC Commission on Human Rights
40 Rector Street, 9th Floor
New York, New York 10006

15

## CLAIMS AND DAMAGES

71.    Based upon the above allegations, Sheridan maintains the following legal claims against Defendant:

### COUNT ONE
**AGE DISCRIMINATION IN VIOLATION OF ADEA AGAINST DEFENDANT NYLIM**

72.    Plaintiff incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

73.    Defendants' discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's age, over 40, and show an animus of age bias.

74.    Defendants' animus towards Plaintiff's age is revealed in instances where similarly situated younger employees (under 40) were treated differently than Plaintiff in respect to of their terms, conditions, and privileges of employment.

75.    Defendant has undertaken these discriminatory practices willfully or with reckless disregard for the Plaintiff's rights protected under ADEA.

76.    These employment practices violate the ADEA.

77.    The aforementioned acts of Defendants constitute unlawful discrimination against Plaintiff in the terms, conditions and privileges of his employment because of his age and in retaliation against his in violation of the provisions of the ADEA.

78.    As a proximate result of Defendants' aforementioned age discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

16

79.     As a further proximate result of Defendants' actions, Plaintiff has and will continue to suffer irreparable and significant damage to his personal and professional good name and reputation.

80.     As a further proximate result of Defendants' actions taken because of Plaintiff's age, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

81.     As a result of the foregoing, Plaintiff is entitled to recover from Defendants an amount equal to the value of all compensation to be earned by Plaintiff had his employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

82.     As a result of the foregoing acts, Plaintiff is entitled to recover an amount no less than $3,000,000.00 in compensatory damages from Defendants in addition to all other amounts sought herein.

83.     In committing the acts alleged herein, Defendants acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages of at least $3,000,000.00 to adequately punish Defendants and to deter Defendants from continuing and repeating such conduct in the future.

## COUNT TWO

**NEW YORK STATE HUMAN RIGHTS LAW §296(1)(A) AGAINST DEFENDANT NYLIM**

84.    Plaintiff incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

85.    Defendant's discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's age, over 40, and show an animus of age discrimination.

86.    Defendant's animus towards Plaintiff's age, over 40, is revealed in instances where similarly situated employees who were under the age of 40 were treated differently than Plaintiff in respect to of his terms, conditions, and privileges of employment.

87.    The aforementioned acts of Defendant constitutes unlawful discrimination against Plaintiff in the terms, conditions and privileges of his employment because of his age and in retaliation against his in violation of the provisions of the NYSHRL § 296, et seq.

88.    As a proximate result of Defendant's aforementioned age discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

89.    As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to his personal and professional good name and reputation.

90.     As a further proximate result of Defendant's actions taken because of Plaintiff's age, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

91.     As a result of the foregoing, Plaintiff is entitled to recover from Defendant an amount equal to the value of all compensation to be earned by Plaintiff had his employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

92.     As a result of the foregoing acts, Plaintiff is entitled to recover an amount no less than $3,000,000.00 in compensatory damages from Defendant in addition to all other amounts sought herein.

93.     In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages of at least $3,000,000.00 to adequately punish Defendant and to deter Defendant from continuing and repeating such conduct in the future.

## COUNT THREE
### NEW YORK CITY HUMAN RIGHTS LAW § 8-107 AGAINST DEFENDANT NYLIM

94.     Plaintiff incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

95.    Defendant's discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's age, over 40, and show an animus of age discrimination.

96.    Defendant's animus towards Plaintiff's age, over 40, is revealed in instances where similarly situated employees who were under the age of 40 were treated differently than Plaintiff in respect to of his terms, conditions, and privileges of employment.

97.    The aforementioned acts of Defendant constitutes unlawful discrimination against Plaintiff in the terms, conditions and privileges of his employment because of his age and in retaliation against his in violation of the provisions of the NYCHRL § 8-107 et seq..

98.    As a proximate result of Defendant's aforementioned age discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

99.    As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to his personal and professional good name and reputation.

100.    As a further proximate result of Defendant's actions taken because of Plaintiff's age, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

101.    As a result of the foregoing, Plaintiff is entitled to recover from Defendant an amount equal to the value of all compensation to be earned by Plaintiff had his employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

102.    As a result of the foregoing acts, Plaintiff is entitled to recover an amount no less than $3,000,000.00 in compensatory damages from Defendant in addition to all other amounts sought herein.

103.    In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages of at least $3,000,000.00 to adequately punish Defendant and to deter Defendant from continuing and repeating such conduct in the future.

## COUNT FOUR
### AGAINST DEFENDANT FIACCO (NYSHRL - AIDING AND ABETTING)

104.    Plaintiff incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

105.    As a result of the aforementioned actions, Defendant Fiacco has discriminated against Plaintiff on account of his age with respect to the terms, conditions and privileges of his employment in violation of New York Executive Law § 290 et seq.

106.    As a result of the aforementioned actions, Defendant Fiacco has violated the New York Executive Law §290 et seq. by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

107.    As a result of Defendant Fiacco discrimination (and aiding, abetting and inciting discrimination) against his, Plaintiff has suffered damages, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

## COUNT FIVE
### AGAINST DEFENDANT FIACCO (NYCHRL - AIDING AND ABETTING)

108.    Plaintiff incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

109.    As a result of the aforementioned actions, Defendant Fiacco has discriminated against Plaintiff on account of his age with respect to the terms, conditions and privileges of his employment in violation of New York City Administrative Code § 8-101 et seq.

110.    As a result of the aforementioned actions, Defendant Fiacco has violated the New York City Administrative Code § 8-101 et seq. by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

111.    As a result of Defendant Fiacco's discrimination (and aiding, abetting and inciting discrimination) against him, Plaintiff has suffered damages, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

22

## COUNT SIX
### (Retaliation – TITLE VII)

112.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

113.   Defendants have retaliated against Plaintiff for having complained of religious discrimination in the terms and conditions of employment in violation of Section 704 of Title VII (42 U.S.C. § 2000e-3).

114.   Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, including the EEO.

115.   Defendants had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, including EEO.

116.   As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, Defendants engaged in adverse treatment of Plaintiff, including, inter alia, terminating her employment.

117.   As a result of the Defendants' wrongful actions complained of herein. Plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including, but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

23

118.   All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and unlawful termination.

## COUNT SEVEN
### (Retaliation - NYSHRL)

119.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

120.   Defendants have retaliated against Plaintiff for having complained of religious discrimination in the terms and conditions of employment in violation of Section 296 (7) of the NYSHRL.

121.   Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, including the EEO.

122.   Defendants had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, including EEO.

123.   As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, Defendants engaged in adverse treatment of Plaintiff, including, inter alia, terminating her employment.

124.   As a result of the Defendants' wrongful actions complained of herein. Plaintiff has suffered severe damages in the form of humiliation, embarrassment,

24

emotional distress, physical injury, as well as money damages including, but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

125. All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and unlawful termination.

## COUNT EIGHT
### (Retaliation - NYCHRL)

126. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

127. Defendants have retaliated against Plaintiff for having complained of religious discrimination in the terms and conditions of employment in violation of Section 8-107(7) of the NYCHRL.

128. Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, including the EEO.

129. Defendants had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, including EEO.

130. As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, Defendants engaged in adverse treatment of Plaintiff, including, inter alia, terminating her employment.

25

131.    As a result of the Defendants' wrongful actions complained of herein. Plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including, but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

132.    All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and unlawful termination.

## COUNT NINE
### (Conspiracy to Discriminate)

133.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

134.    Defendants, individually and collectively conspired to discriminate by aiding, abetting, inciting, compelling and coercing Plaintiff, collectively and individually, and thereafter terminated his employment in violation of the New York State Executive § 296(6).

135.    Defendants conspired to retaliate against Plaintiff for speaking out against his discrimination.

136.    As a result of the Defendants' wrongful actions complained of herein. Plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including, but not limited to regular wages, retirement benefits, insurance benefits and pension.

26

137.   All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and unlawful termination.

## COUNT TEN
### (Discriminatory Discharge)

138.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

139.   Defendants have unlawfully arid intentionally discharged Plaintiff based on his age in violation of 29 U.S.C. § 600, et seq., Section 296 (1) of the NYSHRL, and Section 8-107 of the NYCHRL.

140.   As a result of the Defendants' wrongful actions complained of herein. Plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including, but not limited to regular wages, retirement benefits, insurance benefits and pension.

141.   All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and unlawful termination.

## ATTORNEY'S FEES AND COSTS

142.   Attorney's fees and costs are warranted in this matter as the undersigned, on behalf of Plaintiff have in good faith, attempted to negotiate a reasonable resolution

with Defendant without having to refer this matter to this forum for adjudication, determination and final resolution on the merits.

## PUNITIVE DAMAGES – BAD FAITH

143.    It is presumed that parties to contracts undertake their respective obligations in good faith, with intent to deal fairly. In light of Defendants' obvious and blatant bad faith, wrongdoing and breach of other duties, ***punitive damages*** should be assessed against Defendants so that they be deterred from attempting such harmful employment practices in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

I.    A Declaratory Judgment declaring that the acts complained of herein violate the rights of Plaintiff as guaranteed under ADEA, OWBPA, New York State Human Rights Law and New York City Human Rights Law;

II.    A judgment granting equitable relief directing Defendants to cease and desist from exposing Plaintiff to discrimination and retaliation;

III.    A judgment directing Defendants to reimburse and make Plaintiff whole for any and all earnings he would have received but for Defendants' discriminatory treatment and unlawful dismissal, including but not limited to, back pay and pension benefits;

IV.    A judgment awarding Plaintiff compensatory damages for mental anguish, loss of dignity, humiliation, and injury to livelihood in an amount that is fair, just, and reasonable, to be determined at trial, including reasonable

attorneys' fees, as provided under ADEA, but not less than $3,000,000.

V.     A judgment awarding Plaintiff double damages for Plaintiff's intentional

discrimination;

VI.    A judgment awarding Plaintiff front pay;

VII.   A judgment awarding Plaintiff punitive damages;

VIII.  An award of prejudgment interest, costs and attorney's fees; and

IX.    Such other and further relief that the Court may deem just and proper.


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the complaint.


Dated:      New York, New York
            May 5, 2009


                        Respectfully submitted,

                        **SACK & SACK, ESQS.**


                        By:   _____
                              Jonathan Sack, Esq.  (JSS 1835)

                        **Attorneys for Plaintiff**
                        **MICHAEL T. SHERIDAN**
                        110 East 59th Street, 19th Floor
                        New York, New York 10022
                        Tel.: (212) 702-9000
                        Fax: (212) 702-9702